UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| KATHERINE G. BRUGMANN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:18 CV 80 ACL |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Deputy Commissioner of Operations, | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM**

Plaintiff Katherine G. Brugmann brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration Commissioner's denial of her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act and Supplemental Security Income ("SSI") under Title XVI of the Act.

An Administrative Law Judge ("ALJ") found that, despite Brugmann's severe impairments, she was not disabled as she had the residual functional capacity ("RFC") to perform work existing in significant numbers in the national economy.

This matter is pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c). A summary of the entire record is presented in the parties' briefs and is repeated here only to the extent necessary.

For the following reasons, the decision of the Commissioner will be reversed and remanded.

## I. Procedural History

Brugmann filed her applications for benefits on May 12, 2014, claiming that she became unable to work on November 20, 2013. (Tr. 298-312.) In her Disability Report, she alleged disability due to bipolar disorder, general anxiety disorder, post-traumatic stress disorder ("PTSD"), depression, and chronic migraines. (Tr. 339.) Brugmann was 34 years of age at the time of her alleged onset of disability. Her claims were denied initially. (Tr. 232-37.) Following an administrative hearing, Brugmann's claims were denied in a written opinion by an ALJ, dated March 10, 2017. (Tr. 17-33.) Brugmann then filed a request for review of the ALJ's decision with the Appeals Council of the Social Security Administration (SSA), which was denied on November 20, 2017. (Tr. 1-5.) Thus, the decision of the ALJ stands as the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481.

In this action, Brugmann first argues that the ALJ "failed to properly consider RFC." (Doc. 18 at 3.) She next argues that the ALJ "failed to fully and fairly develop the evidence." *Id.* at 10.

## II. The ALJ's Determination

The ALJ first found that Brugmann met the insured status requirements of the Act through December 31, 2016. (Tr. 22.) Brugmann had not engaged in substantial gainful activity since November 20, 2013, the application date. *Id.* In addition, the ALJ concluded that Brugmann had the following severe impairments: bipolar disorder, depression, and chronic headaches. *Id.* The ALJ found that Brugmann did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Tr. 23.)

As to Brugmann's RFC, the ALJ stated:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a range of work at all exertional levels but with the following nonexertional limitations: She should never be required to work around hazards, such as unprotected heights and she must avoid exposure to concentrated vibration as well as dust, odors, fumes and other pulmonary irritants. She can only work in environments with moderate noise levels. She is limited to performing simple, routine tasks and work requiring only simple work-related decisions. She is capable of frequent interactions with supervisors and co-workers, but should be limited to only occasional contact with the public.

*Id.*

The ALJ found that Brugmann was unable to perform any past relevant work, but was capable of performing jobs existing in significant numbers in the national economy, such as hand packer, laundry/dry cleaning, and janitor. (Tr. 27-28.) The ALJ therefore concluded that Brugmann was not under a disability, as defined in the Social Security Act, from November 20, 2013, through the date of the decision. (Tr. 29.)

The ALJ's final decision reads as follows:

> Based on the application for a period of disability and disability insurance benefits filed on May 12, 2014, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act.
>
> Based on the application for supplemental security income protectively filed on May 12, 2014, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act.

*Id.*

### III.  Applicable Law

### III.A.  Standard of Review

The decision of the Commissioner must be affirmed if it is supported by substantial

evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings." *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted). "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis." *Id.* (internal quotation marks and citations omitted).

To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the Court must review the entire administrative record and consider:

1. The credibility findings made by the ALJ.

2. The plaintiff's vocational factors.

3. The medical evidence from treating and consulting physicians.

4. The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

5. Any corroboration by third parties of the plaintiff's impairments.

6. The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

*Stewart v. Secretary of Health & Human Servs.,* 957 F.2d 581, 585-86 (8th Cir. 1992) (internal citations omitted). The Court must also consider any evidence which fairly detracts from the Commissioner's decision. *Coleman*, 498 F.3d at 770; *Warburton v. Apfel*, 188 F.3d 1047, 1050

(8th Cir. 1999). However, even though two inconsistent conclusions may be drawn from the evidence, the Commissioner's findings may still be supported by substantial evidence on the record as a whole. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (citing *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)). "[I]f there is substantial evidence on the record as a whole, we must affirm the administrative decision, even if the record could also have supported an opposite decision." *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal quotation marks and citation omitted). *See also Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 977 (8th Cir. 2003).

### III.B.  Determination of Disability

A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education and work experience engage in any kind of substantial gainful work which exists … in significant numbers in the region where such individual lives or in several regions of the country." 42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 343 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id*. § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on his ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to

determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or his physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. § 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id.* If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his or his age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n.5 (8th Cir. 2000). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the

claimant is disabled. 20 C.F.R. § 416.920(a)(4)(v). At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

The evaluation process for mental impairments is set forth in 20 C.F.R. §§ 404.1520a, 416.920a. The first step requires the Commissioner to "record the pertinent signs, symptoms, findings, functional limitations, and effects of treatment" in the case record to assist in the determination of whether a mental impairment exists. *See* 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1). If it is determined that a mental impairment exists, the Commissioner must indicate whether medical findings "especially relevant to the ability to work are present or absent." 20 C.F.R. §§ 404.1520a(b)(2), 416.920a(b)(2). The Commissioner must then rate the degree of functional loss resulting from the impairments in four areas deemed essential to work: activities of daily living, social functioning, concentration, and persistence or pace. *See* 20 C.F.R. §§ 404.1520a(b)(3), 416.920a(b)(3). Functional loss is rated on a scale that ranges from no limitation to a level of severity which is incompatible with the ability to perform work-related activities. *See id.* Next, the Commissioner must determine the severity of the impairment based on those ratings. *See* 20 C.F.R. §§ 404.1520a(c), 416.920a(c). If the impairment is severe, the Commissioner must determine if it meets or equals a listed mental disorder. *See* 20 C.F.R. §§ 404.1520a(c)(2), 416.920a(c)(2). This is completed by comparing the presence of medical findings and the rating of functional loss against the paragraph A and B criteria of the Listing of the appropriate mental disorders. *See id.* If there is a severe impairment, but the impairment does not meet or equal the listings, then the Commissioner must prepare an RFC assessment. *See* 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).

## IV. Discussion

Brugmann argues that the ALJ erred in determining Brugmann's RFC. Specifically, she contends that the ALJ failed to fully and fairly develop the record with regard to her mental RFC,[1] and improperly based her determination on the opinion of a non-examining medical consultant. Brugmann further argues that new evidence submitted to the Appeals Council supports her claim and would have changed the ALJ's determination.

RFC is what a claimant can do despite her limitations, and it must be determined on the basis of all relevant evidence, including medical records, physician's opinions, and claimant's description of her limitations. *Dunahoo v. Apfel*, 241 F.3d 1033, 1039 (8th Cir. 2001). Although the ALJ bears the primary responsibility for assessing a claimant's RFC based on all relevant evidence, a claimant's RFC is a medical question. *See Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001); *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000). Therefore, an ALJ is required to consider at least some supporting evidence from a medical professional. *See Lauer*, 245 F.3d at 704 (some medical evidence must support the determination of the claimant's RFC); *Casey v. Astrue*, 503 F.3d 687, 697 (8th Cir. 2007) (the RFC is ultimately a medical question that must find at least some support in the medical evidence in the record). However, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016).

"It is the ALJ's function to resolve conflicts among the various treating and examining physicians." *Tindell v. Barnhart,* 444 F.3d 1002, 1005 (8th Cir. 2006) (quoting *Vandenboom v. Barnhart,* 421 F.3d 745, 749-50 (8th Cir. 2005) (internal marks omitted)). The opinion of a treating physician will be given "controlling weight" only if it is "well supported by medically

---

[1] Brugmann does not challenge the ALJ's findings with regard to her physical impairments.

acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." *Prosch v. Apfel,* 201 F.3d 1010, 1012-13 (8th Cir. 2000). The record, though, should be "evaluated as a whole." *Id.* at 1013 (quoting *Bentley v. Shalala,* 52 F.3d 784, 785-86 (8th Cir. 1997)). The ALJ is not required to rely on one doctor's opinion entirely or choose between the opinions. *Martise v. Astrue,* 641 F.3d 909, 927 (8th Cir. 2011). The opinion of a consulting physician, who examines a claimant once, or not at all, generally receives very little weight. *Singh v. Apfel,* 222 F.3d 448, 452 (8th Cir. 2000).

Brugmann was unrepresented at the administrative hearing. She initially appeared on August 17, 2016, at which time she expressed a desire to proceed without representation. (Tr. 152.) The ALJ stated that the most recent medical records in the file were dated October 2014. (Tr. 157.) The ALJ rescheduled the hearing, so that current records could be obtained. (Tr. 157-58.)

It is well-settled that "the ALJ bears a responsibility to develop the record fairly and fully, independent of the claimant's burden to press h[er] case." *Snead v. Barnhart,* 360 F.3d 834, 838 (8th Cir. 2004). That duty is heightened where, as here, the claimant is not represented by counsel. *See Reeder v. Apfel,* 214 F.3d 984, 987 (8th Cir. 2000).

A second hearing was held on February 1, 2017. (Tr. 163.) Brugmann was unrepresented, and again waived her right to representation. (Tr. 164.) Brugmann testified that she was unable to work due to anxiety and depression. (Tr. 169.) She stated that she saw a caseworker, a therapist, and a psychiatrist for her mental impairments. (Tr. 170.) Brugmann's caseworker, Kelsey Hayes, testified at the hearing. (Tr. 190-93.) Ms. Hayes testified that she had been providing support for Brugmann approximately twice a week since 2014. (Tr. 190-91.) Ms. Hayes explained that her role of "integrated health specialist" involves talking to Brugmann

about her issues, helping ensure Brugmann's medical and daily needs are met, and connecting her with resources.  (Tr. 191.)

The ALJ concluded that Brugmann had the mental RFC to perform simple, routine tasks; work requiring only simple work-related decisions; and was capable of "frequent interactions with supervisors and co-workers, but should be limited to only occasional contact with the public." (Tr. 23.)  In assessing Brugmann's RFC, the ALJ referenced the "limited opinion evidence." (Tr. 27.)  She afforded "significant weight" to the November 2014 opinion of State agency medical expert Charles Watson, Psy.D.  *Id.*  The ALJ explained that Dr. Watson's opinion was "consistent with the record and the claimant's self-reported level of function."  *Id.*  The ALJ concluded that her RFC determination was supported by "the absence of sufficiently convincing evidence the claimant suffers from any debilitating condition that would prevent her from performing in occupations such as those listed by the vocational expert..."  *Id.*

Following the ALJ's decision, Brugmann hired an attorney, and submitted the following additional evidence to the Appeals Council:   treatment records from SSM Behavioral Health Medicine dated June 12, 2015 to June 15, 2016 (114 pages), and records from Greg Mattingly, M.D., dated April 19, 2017 (2 pages).  (Tr. 2.)  The Appeals Council found that this evidence "does not show a reasonable probability that it would change the outcome of the decision."  *Id.*

The Regulations provide that, "[i]f new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it related to the period on or before the date of the administrative law judge hearing decision."  20 C.F.R. §§ 404.970(b), 4.16.1470(b).  "Where...the Appeals Council considers new evidence but denied review, [the Court] must determine whether the ALJ's decision was supported by substantial evidence on the record as a whole, including the new evidence."  *Davidson v. Astrue*, 501 F.3d 987, 990 (8th Cir. 2007).

The records submitted to the Appeals Council from SSM Health DePaul relate to Brugmann's psychiatric hospitalization from June 12, 2015, to June 15, 2015, due to suicidal ideation and a suicide attempt. (Tr. 42.) Brugmann had attempted suicide by overdosing on 50 pills of insomnia medication. *Id.* She explained that following an argument with her fifteen-year-old daughter, she "became very upset and decided to end it all." *Id.* Brugmann had previously been admitted to the psychiatric unit in 2001, and had a history of overdosing on medication and alcohol. *Id.* Brugmann also reported a history of PTSD relating to physical abuse by her husband. *Id.* Upon discharge, Brugmann was diagnosed with bipolar disorder, borderline personality disorder, and alcohol abuse. (Tr. 39.)

The evidence from Dr. Mattingly consists of a letter dated April 19, 2017, in which he indicated Brugmann had been under his care for the prior three years to address Brugmann's problems with bipolar depression. (Tr. 8-9.) Dr. Mattingly stated that Brugmann had "struggled with rather severe problems with bipolar depression which have caused severe limitations and disabilities within her functional capacity and her ability to maintain gainful employment." (Tr. 8.) He stated that, "despite aggressive medication management," Brugmann continued to have problems with insomnia, daytime fatigue requiring repeated naps, difficulties with stress tolerance where she emotionally decompensates under only mild to moderately stressful environments, and problems with processing speed and working memory. *Id.* Dr. Mattingly saw Brugmann on that date, at which time she was tearful, fatigued, had decreased cognitive processing, her mood was "terrible," and she felt hopeless and overwhelmed. *Id.* Brugmann's diagnoses were: bipolar affective disorder, depressed; underlying generalized anxiety disorder; and PTSD. *Id.* Dr. Mattingly expressed the opinion that Brugmann was "100% disabled from a psychiatric perspective." (Tr. 9.)

The records submitted to the Appeals Council relate to the relevant time period, and are not cumulative. When the entire record is considered, including the new evidence, the undersigned finds that the mental RFC formulated by the ALJ is unsupported by substantial evidence.

The only opinion evidence considered by the ALJ is that of State agency medical expert Dr. Watson. Dr. Watson expressed the opinion that Brugmann retained the capacity to acquire and retain simple instructions and sustain concentration and persistence with simple, repetitive tasks. (Tr. 210.) Brugmann "appeared to have the capacity to adapt to changes in settings that do not require frequent public contact or very close interaction with others in the workplace." *Id.* The ALJ accorded significant weight to this opinion, finding it was consistent with the record.

As an initial matter, the undersigned notes it is questionable whether the ALJ's RFC is consistent with Dr. Watson's opinion. Specifically, the ALJ found that Brugmann was capable of "frequent interactions with supervisors and co-workers," whereas Dr. Watson found Brugmann was incapable of "very close interaction with others in the workplace." (Tr. 23, 210.) Additionally, Dr. Watson authored his opinion in November 2014, more than two years prior to the ALJ's decision. Dr. Watson's opinion, therefore, pre-dated Brugmann's psychiatric hospitalization following her suicide attempt as well as Dr. Mattingly's opinion.

Although the ALJ was not required to rely upon a particular physician's opinion, the medical evidence of record is not supportive of the ALJ's findings. The record before the ALJ contained some hand-written treatment notes of Dr. Mattingly, reflecting he diagnosed Brugmann with bipolar disorder and treated her with medication from 2014 through 2016. (Tr. 491-94, 513-14, 657-59.) The ALJ noted that Brugmann complained about her husband's emotional abusiveness to Dr. Mattingly in August 2014. (Tr. 26.) The ALJ remarked that this suggested

that Brugmann's "depression is more situational than a result of any pervasive mental illness." *Id.*

The only other evidence before the ALJ was the Behavioral Health Assessment performed by Ms. Hayes on behalf of Crider Health Center in August 2016. (Tr. 665-92.) Ms. Hayes indicated that Brugmann had been enrolled in community support services since 2014 and had been seeing Ms. Hayes specifically for ten months. (Tr. 668.) Brugmann had been hospitalized one year prior after fighting with her daughter. *Id.* She had been seeing her psychiatrist, Dr. Mattingly, on a regular basis for four years, and also saw a counselor "nearly every week." *Id.* Ms. Hayes diagnosed Brugmann with bipolar I disorder; most recent episode depressed, severe without psychotic features; and generalized anxiety disorder; with a GAF score of 47.[2] (Tr. 690.) Ms. Hayes stated that Brugmann continued to require a "rehabilitation level of support," including regular monitoring from a psychiatrist, semi-regular visits with her counselor, and weekly visits from a caseworker. *Id.* She noted that Brugmann "requires assistance improving her personal hygiene," as her fear of falling prevents her from showering on a regular basis. *Id.* Ms. Hayes stated that Brugmann required assistance creating healthy coping techniques rather than avoidance. *Id.* Finally, she indicated that Brugmann continued to require medication. (Tr. 691.)

The ALJ discussed portions of Ms. Hayes' evaluation in her opinion. For example, she stated that Brugmann's mood was fluctuating "due to issues with her children, further supporting a finding that her depression and anxiety are primarily situational in nature." (Tr. 26-27.) The

---

[2]GAF scores of 41 to 50 represent "serious symptoms" or "any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *See American Psychiatric Ass'n., Diagnostic and Statistical Manual of Mental Disorders* 34 (Text Revision 4th ed. 2000) ("DSM IV–TR").

ALJ also cited Brugmann's ability to answer all questions asked of her, pleasant and cooperative nature, and normal memory. (Tr. 26, 687-89.) The ALJ accorded "no weight" to the GAF score assigned by Ms. Hayes, as Ms. Hayes was not an "acceptable medical source." (Tr. 27.)

The ALJ's finding that Brugmann's "depression" was "situational" was erroneous. Brugmann has been consistently diagnosed with bipolar disorder, which the ALJ found was a severe impairment at step two. No medical provider suggested that Brugmann's bipolar disorder symptoms were caused by purely situational factors. Indeed, such an inference is inconsistent with the nature of bipolar disorder.

The record before the ALJ revealed that Brugmann saw a psychiatrist regularly since 2014 for treatment of her bipolar disorder. Additionally, Brugmann saw a caseworker at least weekly for assistance with daily activities, including medication management, as well as coordination of her healthcare. Ms. Hayes' report referenced Brugmann's psychiatric hospitalization in 2015. In light of the medical evidence before the ALJ, Brugmann's *pro se* status, and the ALJ's acknowledgment of the lack of recent medical evidence, the ALJ should have further developed the record by either requesting additional information from treating providers or ordering a consultative examination.

The evidence subsequently submitted to the Appeals Council by counsel confirmed that Brugmann was hospitalized for a suicide attempt by drug overdose in June 2015, and had a history of suicide attempts by overdose. Further, Dr. Mattingly provided insight regarding Brugmann's condition and its effects on her ability to work.

Considering the medical evidence discussed above, the ALJ's mental RFC determination is not supported by substantial evidence on the record as a whole.

**Conclusion**

The ALJ erred in determining Brugmann's mental RFC. Because the ALJ's opinion finding Brugmann not disabled is not supported by substantial evidence on the record as a whole, it is reversed and this matter is remanded for further proceedings consistent with this opinion. Upon remand, the ALJ shall properly weigh the medical opinion evidence, including the new evidence submitted to the Appeals Council; obtain additional evidence if necessary; and formulate a new mental RFC based on the record as a whole.

*/s/ Abbie Crites-Leoni*
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 26th day of March, 2019.